United States District Court
District of Massachusetts

```
_____
                               )
RFF FAMILY PARTNERSHIP, LP,    )
        Plaintiff,             )
                               )
        v.                     )    Civil No.
                               )    11-10968-NMG
LINK DEVELOPMENT, LLC and      )
JEFFREY KARLL,                 )
        Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Following a three-day bench trial the Court issued a Memorandum of Decision (Docket No. 177) finding in favor of plaintiff RFF Family Partnership, LP ("RFF") on several of its claims for breach of contract but in favor of defendant Link Development, LLP ("Link") on its counterclaim for a surplus from the foreclosure sale (in the amount of $417,734). With respect to plaintiff's claims, the Court ascertained the amount of damages flowing from some of the identified breaches (i.e. $139,071) but not from others. The Court directed plaintiff to provide supplemental briefing in order to quantify the amount of damages it is owed based upon (1) the amount of real estate taxes that accrued upon the Property during the period defendant was in breach of the Loan Agreement and (2) the reasonable attorneys'

fees and costs incurred while litigating this action.[1]

In its Memorandum of Decision, the Court also took under advisement defendant's motion to dissolve the preliminary injunction entered at the outset of the litigation until the Court supplemented its findings on damages. The Court hereby does so and will accordingly dissolve the preliminary injunction and enter judgment.

## I.  **Back Taxes**

Defendant breached its obligation under the Loan Documents to pay taxes on the Property as they became due. In its claim for damages, plaintiff seeks recovery for all of the taxes that it has paid to the Town of Saugus ("the Town"), including those that accrued upon the Property after the foreclosure sale in March, 2011. The Court has therefore instructed plaintiff to specify the amount of taxes that accrued prior to the foreclosure sale.

Plaintiff asserts that, of the $90,222 it agreed to pay to the Town, $57,698 accrued between October 15, 2007 and March 26, 2010, namely, the period during which defendant was in breach. While defendant challenges the sufficiency of the documents submitted by plaintiff in support of its claim for reimbursement of taxes, the Court has already found that plaintiff reimbursed

---

[1] Unless otherwise stated, all defined terms carry the meaning ascribed to them in the Memorandum of Decision (Docket No. 177).

the Town of Saugus for unpaid taxes as part of its Memorandum of Decision.  In fact, documents in support of plaintiff's payment of $90,222 were admitted into evidence by agreement of the parties.  The spreadsheets attached, together with plaintiff's annotations indicating land court, title certificate and other costs subtracted from the payments made, provide adequate documentation of the amount of back real estate taxes owed by defendant. See Pierce v. Clark, 851 N.E.2d 450, 454 (Mass. App. Ct. 2006) (plaintiff "need not prove [contract] damages with mathematical certainty").

Defendant opposes reimbursement of real estate taxes by arguing, for the first time, that a foreclosing mortgagor may not recover property taxes that it paid post-foreclosure. See Natick Five Cents Sav. Bank v. Bailey, 30 N.E.2d 383 (Mass. 1940).  Such an argument is unresponsive to the Court's direction, which instructed the parties to brief the issue of the amount of taxes owed during a specific time, and need not be further addressed at this time.

Accordingly, the Court finds that defendant's breach of the subject provision caused damages in the amount of $57,698.

## II. Attorneys' Fees and Costs

Defendant's breaches forced plaintiff to institute this action and, pursuant to provisions within the Note authorizing the collection of "court costs and reasonable attorneys' fees"

incurred in an Event of Default, the Court awarded attorneys' fees to plaintiff incurred as a result of this action. Plaintiff now submits that it has incurred relevant attorneys' fees and costs in the amount of $162,056.57.

When a contractual fee provision is included by the parties, the question of what fees are owed

> is ultimately one of contract interpretation, and [the court's] primary obligation is simply to honor the agreement struck by the parties.

AccuSoft Corp. v. Palo, 237 F.3d 31, 61 (1st Cir. 2001) (internal quotation omitted). Under Massachusetts law, when a fee provision calls for "reasonable" fees, a court should consider, inter alia, the ability and reputation of the attorney, the time spent, the prices usually charged, the amount of money or property affected by the controversy and the results secured. Id. (citing Cummings v. Nat'l Shawmut Bank, 188 N.E. 489, 492 (Mass. 1934)). Ultimately, the determination of appropriate attorneys' fees under the Cummings standard "lies within the sound discretion of the finder of fact." Id. at 62.

First, even defendant concedes that the hourly rates charged by Attorneys Briansky and Hackett, the two principal lawyers for plaintiff, were reasonable under the circumstances. Attorney Briansky, in particular, charged $285 per hour. He has 17 years of experience and expertise in lending and real estate disputes. The quoted rate appears to be below the market rate for similar

legal services in the greater Boston area. See Conservation Law Found., Inc. v. Patrick, 767 F. Supp. 2d 244, 256-57 (D. Mass. 2011) (noting hourly rate for commercial litigators in Boston area range from $150 to $990 and approving $310 hourly rate for senior attorney in an area of law believed to be less complex).

Second, in light of the amount in controversy, namely, the obligations of a borrower with respect to a $1.4 million loan and the validity of a lien on property purchased at foreclosure for $2.5 million, the overall amount of time spent in litigation and fees sought were reasonable. Although defendant challenges plaintiff counsel's practice of "block billing," whereby attorneys itemize several tasks within a single time entry rather than maintaining separate time entries for each task performed, that method of billing is not unreasonable if the attorneys maintain contemporaneous records and provide sufficiently detailed explanations of those bills. See The Real Estate Bar Ass'n for Massachusetts, Inc. v. Nat'l Real Estate Info. Serve., 642 F. Supp. 2d 58, 68 (D. Mass. 2009), vacated on other grounds, 608 F.3d 110 (1st Cir. 2010). Here, plaintiff's attorneys satisfied that standard by maintaining monthly billing records which described the questions researched, relevant communications and the purpose of memoranda drafted.

The Court will, however, reduce the award based upon the results obtained because it found in favor of defendant on

plaintiff's claim for a deficiency. The parties' positions on the value of the Loan at the time of foreclosure are over $500,000 apart and depend upon the applicable default interest rate, the extent of its application and whether such interest is simple or compound. Plaintiff expended substantial time litigating those issues at summary judgment and trial and, ultimately, was unsuccessful with respect to the maturity date of the Loan and construction of the default interest rate provision of the Note. Because both conclusions significantly affected plaintiff's recovery, the Court finds that reduction of 25% of the attorneys' fees sought is appropriate. Accordingly, the Court will award plaintiff reasonable attorneys' fees and costs in the amount of $121,542.

### III. **Injunction**

At the outset of the litigation, the Court enjoined defendant from accessing or transferring the proceeds of a $450,000 settlement between it and BD Lending Trust. See Docket No. 11. The Court continued enforcement of the injunction despite granting summary judgment against plaintiff on its claim for deficiency judgment on the grounds that the settlement appeared to be defendant's only asset and failure to protect it could render defendant judgment-proof. See Docket No. 129. Having now determined that no deficiency is owed and that the surplus due from plaintiff to defendant more than offsets

plaintiff's claim for damages, the Court will allow defendant's motion to dissolve that injunction.

## ORDER

In accordance with the foregoing,

1) defendant's motion to dissolve the preliminary injunction (Docket No. 173) is **ALLOWED,** and

2) judgment will enter in favor of plaintiff in the amount of $318,311 and in favor of defendant in the amount of $417,734, subject to prejudgment interest, if any, applied by the Clerk of Court.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 26, 2013