United States District Court
District of Massachusetts

```
_____
                               )
RFF FAMILY PARTNERSHIP, LP,    )
        Plaintiff,             )
                               )
        v.                     )    Civil No.
                               )    11-10968-NMG
LINK DEVELOPMENT, LLC and      )
JEFFREY KARLL,                 )
        Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The instant litigation involves conflicting mortgages upon the same property. Currently pending before the Court is plaintiff's motion to enforce a settlement it entered into with former defendant in this case, Steven A. Ross, in his capacity as Trustee of BD Lending Trust.

## I. Background

In 2006, Attorney Stuart Sojcher, purportedly acting on behalf of defendant Link Development, LLC ("Link"), negotiated a loan of $700,000 from BD Lending Trust ("BD Lending") to be secured by a mortgage ("the BD Lending Mortgage") on approximately 22 acres of land in Saugus, Massachusetts then owned by Link ("the Property"). Although not particularly relevant to the pending dispute, Attorney Sojcher apparently acted without corporate authority and absconded with the proceeds

of the loan.

In 2007, plaintiff RFF Family Partnership, LP ("RFF") loaned $1.4 million to Link in exchange for a "good" first mortgage on the same Property.  When RFF brought suit against Link for defaulting on its loan, RFF also sued BD Lending seeking a declaratory judgment that BD Lending's purported interest in the same property was void.  The validity of that interest remained at issue during trial in this case because, on summary judgment, the Court ruled that Attorney Sojcher's unauthorized actions might have later been ratified by Link's owner.

Link, meanwhile, sued Attorney Sojcher and BD Lending in the Massachusetts Superior Court in 2006, alleging, inter alia, fraudulent foreclosure, slander of title and a violation of Chapter 93A.  Link asserted that Attorney Sojcher absconded with the proceeds of the BD Lending loan after Link had warned BD Lending that Attorney Sojcher lacked authority to execute the mortgage.  In June, 2012, Link and BD Lending executed a written settlement agreement ("the Link Settlement") whereby Link dismissed its claims against BD Lending and agreed not to contest the validity of the BD Lending mortgage in this action.  In exchange, BD Lending agreed to pay Link $450,000 up front and $650,000 (or more) at a later date.  (The amount of the supplemental payment was to increase by $50,000 for each year the debt remained outstanding.)

The Link Settlement contains two other terms related to the supplemental payment that are relevant here.  First, the agreement requires BD Lending to provide Link with an assignment of the BD Lending Mortgage ("the Assignment of Mortgage") to be (a) held in escrow pending satisfaction of BD Lending's obligations under the Link Settlement, (b) discharged upon satisfaction of such obligations but (c) recorded in the event of a default thereof.  Second, BD Lending is required to provide Link with seven days notice before it discharges or transfers the BD Lending Mortgage.

On November 14, 2012, just before this Court commenced the three-day bench trial, RFF reported on the record that it had settled its claim against BD Lending but declined to put the terms on the record because the parties desired that they remain confidential ("the RFF Settlement").  BD Lending agreed on the record that the dispute had been resolved to the satisfaction of all parties.  Under the terms of the RFF Settlement (agreed to on November 13, 2012 but first disclosed to the Court through the filing of the instant motion), BD Lending agreed to discharge its mortgage on the Property in exchange for a payment of $140,000 by RFF.  As a result of the RFF Settlement, the Court dismissed BD Lending from the case and conducted the bench trial as a contest between RFF and Link only.

In December, 2012, BD Lending notified Link that it intended

to execute and deliver a discharge of the BD Lending mortgage to RFF. Shortly thereafter, Link recorded the Assignment of the BD Lending Mortgage that it had held in escrow as security under the Link Settlement. Representatives of Link apparently did so because they believed that BD Lending could not discharge the BD Lending Mortgage without obtaining Link's consent (although Link never notified BD Lending of a default).

Since February, 2013, BD Lending has refused to execute the RFF Settlement because Link recorded the Assignment of the BD Lending Mortgage. RFF now moves to enforce their agreement and petitions the Court (1) to order BD Lending to perform its obligations and (2) to pay the costs associated with the motion. BD Lending opposes the motion. Link, although not a party to the settlement between RFF and BD Lending, also responded to RFF's motion in order to oppose a request made by BD Lending in its opposition (discussed further, infra).

## II. Analysis

BD Lending does not dispute that it entered into a settlement agreement with RFF wherein it agreed to discharge the BD Lending Mortgage in consideration for a release of RFF's claim and payment of $140,000. Accordingly, the Court finds that RFF and BD Lending agreed upon all material terms of a settlement and that it is a valid and binding agreement. See, e.g. Quint v. A.E. Staley Mfg. Co., 246 F.3d 11, 15 (1st Cir. 2001) (enforcing

settlement where material terms reached).

Rather than contest the validity of the RFF Settlement, BD Lending asks this Court, in the alternative, (a) to facilitate that settlement by ordering Link to perform certain actions or (b) to excuse BD Lending from performance and restore RFF's declaratory judgment claim to the active trial list.

### A. BD Lending's "Request" for Specific Performance and a Ruling that it has Satisfied the Link Settlement

In the context of its nine-page opposition and without citation to any authority, BD argues that the Court should simply (1) order Link to reassign the mortgage to BD, (2) order BD Lending to pay the proceeds of the RFF Settlement to Link and (3) find that such payment satisfies BD Lending's obligations under the Link Settlement.  More succinctly, BD Lending asks this Court to declare that Link breached the Link Settlement, to amend the amount owed by BD Lending to Link under that agreement and to order the parties to perform accordingly.

Such a sweeping "request" will be denied summarily.  To date, neither Link nor BD Lending has pled an actionable claim against the other.  The Court expresses no view on the merits of BD Lending's potential claims against Link arising from Link's unilateral decision to record the Assignment of Mortgage held in escrow.  It simply declines to order relief in a dispute over which it has no apparent jurisdiction.  Contrary to BD Lending's supposition, this Court does not issue orders with such

nonchalance.

**B.  Impossibility of Performance of RFF Settlement**

BD Lending also raises the defense of impossibility and asks that plaintiff's declaratory judgment claim against it be restored to the active trial list because Link's decision to record the Assignment of Mortgage purportedly rendered it impossible or unduly burdensome for BD Lending to discharge the BD Lending mortgage.

**1.  Legal Standard**

Impossibility excuses performance of contractual obligations where the parties to a contract assume "the continued existence of some particular specified thing" and performance under the agreement becomes impossible due to the "perishing of the thing without the fault of either party." Chase Precast Corp. v. John J. Paonessa Co., Inc., 566 N.E.2d 603, 605 (Mass. 1991). Similarly, the "companion rule" of frustration of purpose excuses performance that remains possible but "the expected value of performance to the party seeking to be excused has been destroyed" by the supervening event. Id. at 606. The principal question at issue under either doctrine is

> whether an unanticipated circumstance, the risk of which should not fairly be thrown on the promisor, has made performance vitally different from what was reasonably to be expected.

Id. at 374.

### 2. Application

BD Lending's claim is more properly characterized as one for frustration of purpose because Link's decision to record the Assignment of Mortgage has rendered BD Lending's discharge of that assignment more difficult, but not impossible.  In any event, the circumstances, as determined from the undisputed terms of both settlement agreements and from the public record, clearly do not excuse BD Lending from performance of the RFF Settlement.

First, at the time that BD Lending agreed to secure a discharge of the BD Lending Mortgage, its principal understood that (1) it owed a payment to Link in excess of $650,000, (2) Link held the Assignment of Mortgage in escrow as security on that supplemental payment and (3) it had to provide seven days advance notice to Link before discharging the BD Lending Mortgage.  Regardless of whether BD Lending had to obtain Link's consent under the Link Settlement before discharging the BD Lending Mortgage, BD Lending should have understood that performance under the RFF Settlement required it to notify Link that it was about to discharge Link's only security with respect to BD Lending's substantial outstanding debt.

Second, and more significantly, BD Lending unquestionably understood that its supplemental payment obligation to Link was not conditioned upon the amount it recovered on the BD Lending Mortgage through litigation because the Massachusetts state court

presiding over Link's suit against BD Lending had already decided that issue.  Displaying eerie similarities to this case, in January, 2012, on the day that trial was set to commence Link and BD Lending reported to that court a settlement based upon an initial up-front payment and second payment (as discussed supra). The presiding superior court judge approved the settlement based upon the parties' oral representations of their agreement on the record in open court.

BD Lending later refused to execute the written settlement agreement, arguing that it omitted a term conditioning the supplemental payment upon BD Lending's ability to recover on its mortgage in this action.  The dispute prompted Link to file a motion to enforce the Link Settlement and, in May, 2012 the Massachusetts Superior Court rejected BD Lending's argument on the grounds that BD Lending had agreed, in open court, to make a supplemental payment in the amount of $650,000 or more and that such payment was not conditioned upon its ability to recover. See Link Development, LLC v. Stuart Sojcher et. al., Civ. No. SUCV2006-05242, at 10-12 (Mass. Super. Ct. May 7, 2012) (J. Cosgrove) (unpublished).  BD Lending therefore understood that, at the time it entered into the RFF Settlement, obtaining a settlement payment of $140,000 would not automatically satisfy its debt to Link.

The foregoing makes clear that Link's actions do not

constitute an "unanticipated circumstance" nor did they render BD Lending's performance under the RFF Settlement "vitally different" from what it should have expected.  When BD Lending promised to discharge its Mortgage on the Property, it should have foreseen that <u>some</u> manner of negotiation with Link would be required in order to fulfill its obligations and that Link had the capability, rightfully or wrongfully, to interfere with BD Lending's performance.  The Court does not decide here whether Link breached the Link Settlement by recording the Assignment of Mortgage.  That is a question for another forum.  The Court finds only that, based upon the language of the Link Settlement and the judgment of the Massachusetts Superior Court interpreting it, BD Lending should have foreseen a dispute with Link.  Accordingly, BD Lending will not be excused from its obligation under the RFF Settlement to discharge the BD Lending Mortgage.

Finally, the Court declines to award fees and costs to any party in connection with enforcement of the RFF Settlement.  Each party shall bear its own costs.

**ORDER**

In accordance with the foregoing,

1) plaintiff's motion to enforce settlement (Docket No. 185) is **ALLOWED**; and

2) BD Lending is **directed** to discharge the BD Lending Mortgage.

**So ordered.**

/s/ Nathaniel M. Gorton<br>
Nathaniel M. Gorton<br>
United States District Judge

Dated June 26, 2013