**United States District Court**
**District of Massachusetts**

```
_____     )
                                )
RFF FAMILY PARTNERSHIP, LP,     )
                                )
        Plaintiff,              )
                                )
        v.                      )     Civil Action Nos.
                                )     11-10968-NMG and
LINK DEVELOPMENT, LLC and STEVEN )   14-10065-NMG
A. ROSS, individually and in his )
capacity as Trustee of BD       )
Lending Trust,                  )
                                )
        Defendants.             )
_____     )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This protracted litigation involves contradictory mortgages recorded with respect to a 22-acre commercial property in Saugus, Massachusetts ("the Property"). The conflict has spawned multiple lawsuits, including two in this Court. The prevailing controversy concerns a three-way dispute among Link Development, LLC ("Link"), BD Lending Trust ("BD Lending") and RFF Family Partnership LP ("RFF") with respect to a 2012 settlement between RFF and BD Lending.

These convoluted cases have become intractable for several reasons:

1) BD Lending, caught between the prospect of significant tort liability to Link and the prospect of an uncertain resolution with RFF, entered into two settlement agreements, each conditioned, at least indirectly, upon some action of a third party;

2) while BD Lending intended to limit its obligation to Link to the amount it expected to receive from RFF, its agreement with Link neglected to reflect that intention and instead, it required a fixed payment; and

3) the parties have confirmed on several occasions, on the record and at oral argument, that BD Lending has no assets.

This litigation began in 2006 and has since included one bench trial, two federal lawsuits, at least two state court actions and two separate settlement agreements consummated on the eve of the respective trials in those actions.

Numerous motions are currently pending before this Court, including (1) RFF's motion for contempt against BD Lending based upon the latter's failure to comply with the terms of a settlement agreement in the 2011 Federal Case, (2) Link's motion to dismiss BD Lending's cross-claims against it in the 2014 Federal Case, (3) several cross-motions for summary judgment in the 2014 Federal case and (4) several discovery motions.

I.    **Factual Background and Procedural History**

The facts and procedural history of this litigation are complicated and difficult to summarize in chronological order. In essence, all of the cases emanate from the unauthorized conveyance of a mortgage on the Property in 2006 by a subsequently disbarred attorney and the parties' efforts to sort out ownership of that real estate ever since.

### A.    The BD Lending Mortgage

In 2005, Link (a limited liability company) was formed by now-disbarred Attorney Stuart Sojcher ("Sojcher") on behalf of an investor to hold and develop the Property which the developer had acquired by foreclosure deed.

In September, 2006, Sojcher, without authorization of Link, executed a 30-day promissory note payable to BD Lending in the amount of $700,000 to be secured by a mortgage on the Property ("the BD Mortgage"), then owned by Link.  The individual defendant, Steven A. Ross ("Ross"), is named as a party-defendant in his capacity as the Trustee of BD Lending and, with respect to certain claims, also in his individual capacity. The BD Mortgage was subsequently recorded in October, 2006. Attorney Sojcher continued to act without corporate authority and then absconded with most of the proceeds of the loan.[1]

In November, 2006, after Link defaulted on the short-term loan which was secured by the BD Mortgage, BD Lending commenced initial foreclosure proceedings on the Property.

### B.    The 2006 Superior Court Case

In response to BD Lending's foreclosure proceedings, in December, 2006, Link filed a complaint against Attorney Sojcher

---

[1] In August, 2005, Sojcher had also purported to convey, on behalf of Link, a security interest to a separate entity, Desert Pine LLC, but that mortgage does not appear to be at issue in this case.

and BD Lending in the Massachusetts Superior Court for Suffolk County ("the 2006 Superior Court Case"), along with a parallel suit in Land Court, alleging, inter alia, "slander of title," fraud, conversion, civil conspiracy and violations of Chapter 93A. Link also sought a declaration that the BD Mortgage was void and that Sojcher was "not authorized to enter into any mortgage on behalf of [Link]." Link asserted that Attorney Sojcher had absconded with the proceeds of the loan made in connection with the BD Mortgage after Link had warned BD Lending that Attorney Sojcher lacked authority to execute the mortgage but that BD Lending had gone forward with the transaction anyway.

### C. Subsequent Developments

While the Superior Court action was pending, in October, 2007, RFF loaned $1.4 million to Link ("the RFF Loan") in exchange for a "good" first mortgage on the Property ("the RFF Mortgage"). As part of the loan agreement, Link represented, inter alia, that (1) the RFF Mortgage would be a "good first mortgage and not ... subject to any liens or encumbrances, whether inferior or superior" and (2) Link would not incur, assume, create or permit "any mortgage, pledge, lien, lease, encumbrance or charge" on the Property without the prior written consent of RFF.

In March, 2008, Link defaulted on the RFF Loan.
Representatives of RFF and Link subsequently negotiated an
extension of the maturity date of the RFF Loan until November,
2008, as well as incremental extensions thereafter.  In March,
2010, however, RFF exercised its statutory power of sale under
the RFF Mortgage, conducted a public auction and foreclosed the
Mortgage.  RFF, as the highest bidder, purchased the Property
for $2.5 million.

### D.   The 2011 Federal Case

In June, 2011, RFF filed a complaint in this Court against
BD Lending and Link ("the 2011 Federal Case"), alleging that
Link had defaulted on the loan, breached loan agreements and
falsely represented that RFF had a legally valid and enforceable
first lien on the Property.  The complaint also alleged that the
BD Mortgage was fraudulently conveyed and therefore
unenforceable.  In various memoranda and orders, the Court
characterized the dispute in the 2011 Federal Case as
principally concerning damages owed by BD and Link to RFF and
the amount of any surplus of such damages that RFF owed to other
lienholders.

### E.   The 2012 Link Settlement

In June, 2012, just before the 2011 Federal Case was
scheduled to go to trial, Link and BD Lending executed a written
settlement agreement ("the 2012 Link Settlement") whereby Link

dismissed its claims against BD Lending in the 2006 Superior
Court Case and agreed to

> waive[] all rights to contest the authenticity,
> enforceability, and/or legitimacy of the promissory
> note from Link to BD dated September 29, 2006... or
> the mortgage dated September 29, 2006 from Link to BD
> securing the BD Note.

In exchange, BD Lending agreed to pay Link $450,000 up front and
$650,000 (or more) at a later date. (The amount of the
supplemental payment was to increase by $50,000 for each year
the debt remained outstanding.)

The Link Settlement contains two other provisions relevant
here. First, it requires BD Lending to provide Link with an
assignment of the BD Lending Mortgage ("the Assignment of
Mortgage") to be (a) held in escrow pending satisfaction of BD
Lending's obligations under the Link Settlement, (b) discharged
upon satisfaction of such obligations but (c) recorded in the
event of a default thereof. Second, BD Lending is required to
provide Link with seven days notice before it discharges or
transfers the BD Lending Mortgage.

### F. The November, 2012 Trial of the 2011 Federal Case

On November 14, 2012, just before this Court commenced a
bench trial in the 2011 Federal Case, RFF reported on the record
that it had settled its claim against BD Lending but declined to
put the terms of the settlement on the record because the
parties desired that they remain confidential ("the 2012 RFF

-6-

Settlement"). BD Lending agreed, on the record, that the dispute had been resolved to the satisfaction of all parties.

Under the terms of the RFF Settlement (agreed upon November 13, 2012 but first disclosed to the Court at the filing of RFF's motion to enforce the settlement on March 22, 2013), BD Lending agreed to discharge its mortgage on the Property in exchange for a payment of $140,000 by RFF. As a result of the RFF Settlement, the Court dismissed BD Lending from the 2011 Federal Case and conducted the bench trial as a contest between RFF and Link with respect to the amount of money Link owed RFF at the time of the March, 2010 foreclosure sale.

On February 5, 2013, the Court entered a Memorandum of Decision finding (1) in favor of RFF on several of its claims for breach of contract but (2) that RFF had actually received a surplus in connection with its foreclosure sale.

Although RFF had initially sought a declaratory judgment of the invalidity of the BD Mortgage, that claim was not finally adjudicated as part of the 2011 Federal Case. At the summary judgment stage, the Court had ruled that Attorney Sojcher's unauthorized action might have later been ratified by Link's principal during a phone call in October, 2006 but that Sojcher did not, as a matter of law, have actual or apparent authority to execute the BD Mortgage.

The claim of invalidity of the 2006 BD Mortgage was withdrawn pursuant to the 2012 RFF Settlement, however, and therefore was not resolved by the Court. Indeed, the Court noted in its Memorandum of Decision that it did not make any "finding as to the validity of the denoted potential liens."

### G. Link's Recording of the Assignment of the BD Mortgage

On December 5, 2012, BD Lending notified Link that it intended to execute and deliver a discharge of the BD Mortgage to RFF. The next day, Link recorded the Assignment of the BD Mortgage that it had held in escrow as security under the 2012 Link Settlement. Representatives of Link apparently did so because they believed that (1) BD Lending's actions constituted a breach of the Link Settlement and (2) BD Lending could not discharge the BD Mortgage without obtaining Link's consent (although Link never notified BD Lending of a default).

Since February, 2013, BD Lending has refused to execute the RFF Settlement because Link recorded the Assignment of the BD Lending Mortgage. In March, 2013, RFF moved to enforce the 2012 RFF Settlement and petitioned the Court to order BD Lending (1) to perform its obligations and (2) to pay the costs associated with the motion. On June 26, 2013, the Court allowed RFF's motion and held that BD Lending was not excused from complying with the RFF Settlement simply because its terms required some manner of interaction and coordination with Link.

On October 23, 2013, in light of BD Lending's continued
refusal to discharge the BD Mortgage, RFF filed a motion for
contempt against BD Lending.  BD Lending opposed the motion
later that month on essentially the same grounds previously
rejected by the Court in its Memorandum & Order allowing RFF's
motion to enforce the settlement.  The Court scheduled a hearing
on the motion on February 6, 2014.  On that same day, BD Lending
filed a cross-claim against Link in the 2014 Federal Case and
the hearing was postponed.

On February 21, 2014, BD Lending filed a supplemental
opposition to RFF's motion for contempt, contending that its
cross-claim against Link in the 2014 Federal Case was
dispositive of the motion for contempt in the 2011 Federal Case.
In essence, BD Lending contends that it has done all it can to
comply with the terms of the 2012 RFF Settlement but that it has
been prevented from doing so by Link's wrongful recording of the
Assignment of the Mortgage.

**H.    The 2014 Federal Case**

On January 10, 2014, RFF filed another complaint in this
Court against Link and BD Lending, seeking (1) declaratory
judgment that the 2006 BD Mortgage is void and (2) monetary
damages against Link and BD lending.

On February 6, 2014, the same day that the Court had
scheduled a hearing on RFF's motion for contempt against BD

Lending in the 2011 Case, BD Lending answered the complaint in the 2014 Federal Case and filed cross-claims against Link, seeking a declaration that the Assignment of Mortgage that was recorded by Link on December 6, 2012 was wrongfully recorded and should be discharged. In essence, BD Lending blames Link for both its failure to comply with the terms of the RFF Settlement and for the wrongful recording of the Assignment.

On February 21, 2014, the Court scheduled a combined hearing on both RFF's motion for contempt in the 2011 Federal Case and Link's motion to dismiss and to hold a scheduling conference in the 2014 Federal Case. That hearing, after several postponements, finally took place on April 10, 2014.

On June 10, 2014, Link filed a series of cross-claims against BD Lending, arguing that BD Lending is in breach of the Link Settlement and that Steven A. Ross ("Ross"), BD Lending's trustee, is personally liable for his and BD Lending's unfair and deceptive trade practices.

On July 30, 2014, Ross moved for summary judgment on the claims against him in his personal capacity. Two weeks later, RFF moved for partial summary judgment on its claims against BD Lending and Link. On September 2, 2014, Link filed oppositions to the motions for summary judgment and also moved, under Fed. R. Civ. P. 56(f)(1), for the Court to enter summary judgment

against RFF and BD Lending.  Finally, BD Lending and RFF have filed several evidentiary and procedural motions.

## I.   The Parties' Positions

While the Court will address each pending motion in turn, it is perhaps illuminating to sketch out briefly the "global" position of each of the three parties to the two actions before this Court.

### 1.   RFF

RFF currently owns the Property and seeks to have that ownership declared unencumbered.  Standing in its way, of course, is the BD Mortgage.  Accordingly, RFF has taken two separate but contiguous paths.  First, it has moved to enforce the RFF Settlement which it reached with BD Lending on the eve of trial in the 2011 Federal Case and which requires BD Lending to discharge the BD Mortgage.  In light of BD Lending's intransigence, RFF has now moved to hold BD Lending in contempt. (BD Lending claims impossibility because Link unexpectedly recorded an assignment of the BD Mortgage and, supposedly, will release it only upon payment of approximately $1.4 million.) Second, RFF seeks to have the BD Mortgage declared void as having been entered into without authority by Attorney Sojcher. Either way, RFF wants unencumbered title to the Property.

### 2. Link

Link currently holds an assignment of the BD Mortgage and awaits payment by BD Lending of approximately $650,000, the remainder of the Link Settlement. Link alleges that both BD Lending and Ross breached the Link Settlement and that such default justified Link's recording of the assignment of the BD Mortgage previously held in escrow. Link has also moved for a declaratory judgment that the BD Mortgage is valid, because BD Lending and RFF, after having acted as if the mortgage were valid, should be judicially estopped from denying its validity.

### 3. BD Lending

BD Lending finds itself a party to two settlement agreements but unable to comply with either. First, as part of the Link Settlement of the state court case, BD Lending agreed to pay Link $450,000 up front and an additional $650,000 (or more) at a later date in exchange for Link dismissing its claims against BD Lending. BD Lending also provided Link with an assignment of the BD Mortgage to be held in escrow and recorded only in the event BD Lending defaults. Significantly, a Massachusetts state court has held that the Link Settlement does not limit BD Lending's obligation to pay Link based upon the amount of money BD Lending receives from RFF in order to discharge the BD Mortgage.

In other words, while BD Lending expected to leverage its settlement with RFF into a full satisfaction of its debt to Link, that isn't going to happen because its obligation to pay Link $650,000 is unconditional.  Nonetheless, BD Lending persists in its contention that it owes Link only the $140,000 it received in the RFF Settlement.  Moreover, because its representatives believe that Link's recording of the assignment was unjustified, BD Lending pleads impossibility with respect to its obligation to discharge the BD mortgage pursuant to the RFF settlement.

## II. __RFF's Motion for Contempt in the 2011 Federal Case__ (Docket No. 206)

The Court need not engage in extensive legal analysis of the motion for contempt because it has already explicitly rejected the arguments offered by BD Lending in its Memorandum & Order of June 26, 2013.  That Order allowed RFF's motion to enforce the 2012 RFF Settlement.

BD Lending's principal defense is that it "took steps to comply with the Order" and that its attempts have been frustrated by Link, an organization not under its control.  In its previous order, the Court found the essential facts necessary to hold BD Lending in contempt, stating that

> RFF and BD Lending agreed upon all material terms of a settlement and [] it is a valid and binding agreement.

Moreover, the Court interpreted BD Lending's arguments as (1) a request to order specific performance by Link to reassign the BD Mortgage to BD Lending and (2) a claim of legal impossibility.

With respect to BD Lending's first contention requesting that the Court order specific performance by Link, the Court

> expresse[d] no view on the merits of BD Lending's potential claims against Link arising from Link's unilateral decision to record the Assignment of Mortgage held in escrow. It simply declines to order relief in a dispute over which it has no apparent jurisdiction.

With respect to BD Lending's second argument claiming impossibility, the Court noted that

> [w]hen BD Lending promised to discharge its Mortgage on the Property, it should have foreseen that <u>some</u> manner of negotiation with Link would be required in order to fulfill its obligations and that Link had the capability, rightfully or wrongfully, to interfere with BD Lending's performance. The Court does not decide here whether Link breached the [2012] Link Settlement by recording the Assignment of Mortgage. That is a question for another forum. The Court finds only that, based upon the language of the [2012] Link Settlement and the judgment of the Massachusetts Superior Court interpreting it, BD Lending should have foreseen a dispute with Link. Accordingly, BD Lending will not be excused from its obligation under the [2012] RFF Settlement to discharge the BD Lending Mortgage.

The arguments proffered by BD Lending in its opposition to RFF's motion for contempt are identical to those previously rejected by the Court. BD Lending has also noted, however, that

> [b]y asserting the Crossclaim [in the 2014 Federal Case], BD is acting in furtherance of obtaining a discharge of the mortgage. If BD is successful with

-14-

its claims, the Assignment will be discharged, thereby allowing the mortgage to be discharged in accordance with the Court Order.

BD's cross-claims, asserted only after a hearing had been scheduled on the motion for contempt, do not alter the Court's previous conclusion.  Accordingly, BD Lending will be held in contempt for its failure to discharge the mortgage as agreed to in the 2012 RFF Settlement.

## III. **Pending Motions in the 2014 Federal Case**

In the 2014 case, RFF brings claims against BD Lending and Link seeking both declaratory and monetary relief from BD Lending and Link.  RFF's claim for declaratory relief (Count I) requests a court order that the BD Mortgage is null and void because it was signed by an individual (Attorney Sojcher) who lacked authority to sign it.  RFF's claim for monetary relief alleges that (1) BD Lending breached the 2012 RFF Settlement agreement (Count II), (2) BD Lending negligently or intentionally misrepresented that it would discharge the BD Mortgage in exchange for $140,000 (Count III), (3) BD Lending and Link both committed slander of title by assigning the BD Mortgage despite knowing that it was invalid (Count IV) and (4) Steven Ross (in his individual capacity) and BD Trust violated M.G.L. c. 93A by engaging in unfair trade practices (Count V).

BD Lending responded to the complaint on February 6, 2014, by filing cross-claims against Link, seeking a declaratory

-15-

judgment that Link wrongfully recorded the Assignment of the BD Mortgage (Count I) and money damages from Link for breach of contract (Count II), promissory estoppel (Count III), tortious interference (Count IV), violations of M.G.L. c. 93A (Count V) and breach of the covenant of good faith and fair dealing (Count VI).

In June, 2014, Link filed a series of cross-claims against BD Lending, contending that (1) BD Lending and Ross are in breach of the Link Settlement (Count I), (2) BD Lending and Ross breached the covenant of good faith and fair dealing (Count II), (3) the Court should issue a declaratory judgment that Ross is individually liable for the outstanding amounts due (Count III) and (4) BD Lending and Ross are in violation of M.G.L. c. 93A (Count IV).

### A. Link's Motion to Dismiss (Docket No. 12)

Link moves to dismiss RFF's complaint against it on the grounds that (1) the statute of limitations has run, (2) RFF has failed to allege special damages required in claims of slander of title and (3) RFF's claims are barred by res judicata.

#### 1. Statute of Limitations

Link's initial argument is that RFF's complaint was filed outside of the three-year statute of limitations in Massachusetts for slander of title and, accordingly, must be dismissed. Link contends that the claims for a declaratory

judgment and for slander of title are both premised upon the same underlying factual allegation: that Link's improper recording of the BD Mortgage violated RFF's rights to the Property.  Because RFF had knowledge of the BD Mortgage in October, 2007, its claims are purportedly barred under the applicable statute of limitations.

RFF responds that its claims against Link are based on Link's recording of the BD Mortgage after the trial in the 2011 case on December 6, 2012.  That was done, according to RFF, despite the fact that Link knew that the BD Mortgage was invalid and that Link had previously represented as much.  Because the slander of title occurred less than three years prior to the filing of the complaint in the 2014 case, RFF's claim falls within the applicable three-year statute of limitations.

The operative dispute is over what specific act constitutes the core of RFF's claim.  RFF contends that its claim is based on the December, 2012, assignment of the BD Mortgage while Link asserts that the alleged slander is the BD Mortgage itself, signed in September, 2006.  The Court sides with RFF and finds that its claim is based on the December, 2012 assignment and falls within the applicable statute of limitations period.

## 2.  Failure to Allege Special Damages

Link also maintains that RFF's claims against it fail because the complaint includes no allegations of special damages

that are required to sustain a claim for slander of title. Link notes that the Massachusetts Supreme Judicial Court ("the SJC") has defined special damages as the pecuniary loss resulting "directly and immediately" from the conduct of others and must be traced to a "specific loss of sales to identifiable customers." See HipSaver, Inc. v. Kiel, 464 Mass. 517, 536 (2013). Here, Link argues that RFF's complaint is devoid of any allegations that RFF suffered damage "directly and immediately" from any third party or that RFF lost a sale to an "identifiable customer." According to Link, RFF simply states that it has been unable to sell the Property without reference to any specific alleged slander.

In response, RFF notes that it has satisfied its burden of alleging special damages. Indeed, RFF avers that it has sustained damages "directly and immediately" because of the "impairment of vendibility" caused by Link's actions. See Restatement (Second) of Torts § 633(1)(a). Moreover, RFF points to various authorities that have held that attorneys fees constitute special damages under an action for slander of title.

The HipSaver decision notes that special damages must be traced to "identifiable customers." Here, the Court infers such a tracing in light of RFF's allegations. Massachusetts courts have held that legal expenses can satisfy the requirements of a claim for slander of title. See George v. Teare, No. 994102,

-18-

2000 WL 1512376, at *3 ("[T]here is evidence of injury resulting from the attorneys fees incurred to defeat the subsequent claim of adverse possession brought by [a third party]."); see also Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000) (upholding "the recovery of attorney fees for the tortious conduct at issue here, slander of title").

Accordingly, the Court finds that RFF has appropriately alleged special damages for its slander of title claim.

### 3.    Res Judicata

Finally, Link contends that RFF's claims against it are barred under the doctrine of res judicata because they were already litigated (1) to a final judgment on the merits (2) by these same parties (3) in an identical action. See Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc., 181 F.3d 174, 177 (1st Cir. 1999). Indeed, Link explains that RFF previously brought a claim against Link to "declare the BD Mortgage void as a result of fraud."

In response, RFF admits that, although it previously brought an action on the same grounds as those at issue here, the issue was never finally adjudicated because the parties settled prior to trial. While a settlement can have preclusive effect, that is so only if the Court enters a final judgment which it did not in the 2011 Federal Case. Moreover, RFF emphasizes that the Court's Memorandum of Decision explicitly

-19-

made no "finding as to the validity of any of the denoted potential liens."

The Court now finds that res judicata does not bar RFF's complaint in this case. While it is perhaps debatable whether the private settlement in the 2011 Federal Case constituted a final judgment, the Court subsequently disclaimed any ruling on the merits of that issue in its Memorandum of Decision on February 5, 2013. The validity of the BD Mortgage was not adjudicated in any decision or judgment entered as part of the 2011 case.

Accordingly, the Court will deny Link's motion to dismiss.

**B.   Motions for Summary Judgment**

**1.   Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co._,_ 950 F.2d 816, 822 (1st Cir. 1991) (citation omitted). To prevail, the moving party must show, through pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that would affect the case's ultimate outcome. Anderson v. Liberty Lobby, Inc._,_ 477 U.S. 242, 248 (1986). Factual disputes of merely ancillary interest will not preclude summary judgment.

Id.  A genuine issue of material fact exists where the evidence with respect to the disputed material fact "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

At this stage, the Court views the entire record in the light most favorable to the non-moving party and makes all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  To evaluate cross-motions for summary judgment, the Court views each motion separately and applies the applicable presumptions accordingly. Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013).  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

### 2. Motions for Summary Judgment filed by Defendant Steven A. Ross, individually (Docket Nos. 31 & 32)

Defendant Ross, in his individual capacity, moves for summary judgment on Counts III and V of RFF's complaint (Docket No. 31) and on Counts I, II, III and IV of Link's Cross-Claims (Docket No. 32).  In essence, Ross's repeated argument with respect to both motions and all claims against him is that he

had no direct involvement in any relevant matter and, instead, left all of the dealings to his attorney.

There is no need to analyze Ross's arguments in depth because the Court finds they are dependent upon genuine issues of material fact. Ross's argument with respect to RFF's complaint is simply that he was not sufficiently involved in an individual capacity. RFF acknowledges that Ross made no direct representations to it but asserts that he exercised direct control over BD Lending, which it contends is a nominee trust, and that, even if the trust is valid, Ross should not be able to hide behind BD Lending after using it for an illegal purpose. Under the present posture of this case, those issues are not susceptible of resolution at summary judgment.[2]

The argument of Ross with respect to Link's cross-claims, also made in his individual capacity, mirrors those just addressed by the Court. To avoid individual liability, Ross maintains that he cannot be held personally liable with respect to any of Link's cross-claims, mainly because his attorney handled the transactions. That incantation is insufficient to demonstrate that, as a matter of law, Ross cannot be liable individually. Accordingly, the Court will deny both of Ross's motions for summary judgment.

---

[2] The Court treats as frivolous and unworthy of further attention RFF's oblique effort, in a footnote, to deny Ross's motion for lack of a properly formatted statement of material facts.

**3. Motion for Summary Judgment by Plaintiff RFF Family Partnership** (Docket No. 39)

RFF moves for summary judgment on three counts of its complaint against Link and BD. Specifically, RFF moves for (1) a declaratory judgment that, as a matter of law, the BD Mortgage is void, (2) judgment that Link slandered RFF's title by recording the assignment at issue and (3) a ruling that BD Lending breached the terms of the 2012 RFF Settlement.

As an initial matter, the Court finds, pursuant to the logic it has now employed several times in the 2011 Federal Case, that BD Lending breached the 2012 RFF Settlement. The settlement agreement is valid and BD Lending has failed to comply with its terms. BD Lending again argues that its non-performance should be excused but the Court simply reiterates that the fact that BD Lending would have been required to engage in some manner of negotiation with Link was not an "unanticipated circumstance." See Chase Precast Corp. v. John J. Paonessa Co., Inc., 566 N.E.2d 603, 606 (Mass. 1991) (citation omitted) (emphasis added).

Second, the Court cannot find, as a matter of law, that Link slandered RFF's title by recording the assignment at issue. Slander of title includes a requirement that any false statements with respect to title be made knowingly or in reckless disregard of the truth or falsity thereof. CMI Assocs.,

-23-

LLC v. Reg'l Fin. Co., LLC, 775 F. Supp. 2d 281, 289 (D. Mass. 2011). Here, drawing all inferences in favor of the non-moving party, the Court finds no such knowledge as a matter of law.

Finally, the Court also declines to enter summary judgment on behalf of RFF on the declaratory judgment with respect to the validity of the BD Mortgage. While Attorney Sojcher lacked authority to enter into the BD Mortgage, RFF will be judicially estopped from denying the validity of the BD Mortgage. RFF has successfully relied upon its contention in related cases that the BD Mortgage is valid and RFF's decision to settle with BD Lending was predicated upon such validity.

### 4. Motions for Summary Judgment under Fed. R. Civ. P. 56(f)(1) by Link Development, LLC (Docket Nos. 53 & 56) and Joint Motion to Strike Link's untimely filed motions for summary judgment (Docket No. 61)

In response to the motions of RFF and BD Lending for summary judgment, Link filed requests, tacked on to its opposition briefs, for summary judgment in its favor under Fed. R. Civ. P. 56(f)(1). See Docket Nos. 53 & 56. In their responses, RFF, BD Lending and Ross cry foul, contending that Link's pleadings were submitted more than one month after the Court's deadline for filing summary judgment motions.

Under Rule 56(f)(1), the Court may "grant summary judgment for a nonmovant" if it first gives notice and a reasonable time to respond. Indeed, it is

-24-

well established that a party that moves for summary judgment runs the risk that the court may grant summary judgment <u>sua</u> <u>sponte</u> against the movant.

<u>Banco do Brasil, S.A.</u> v. <u>275 Washington St. Corp.</u>, 889 F. Supp. 2d 178, 187 (D. Mass. 2012) (quotation marks and citation omitted).

Because the Court is unconvinced by the arguments made with respect to Link's cross-claims against BD Lending, the Court need not address the joint motion to strike Link's motion for summary judgment on those claims.  Link's motion for summary judgment on its cross-claims against BD Lending will be denied.

With respect to Link's motion for summary judgment on RFF's claims, however, the Court finds that Link's arguments are persuasive.  As Link notes in one of its many submissions to the Court, "the issue of whether the BD Mortgage is void has been put to rest."  The Court agrees.  Although it seems inevitable that the BD Mortgage was, in fact, invalid, the Court will not now unravel eight years of litigation and, more importantly, two separate settlement agreements that were premised on the validity of that mortgage.  RFF made a calculation that a settlement based on the legal fiction of the BD Mortgage's validity would be desirable.  Moreover, despite RFF's arguments to the contrary, its subsequent actions relied on that validity.  Such conduct should and will estop a party from asserting a

different legal position at a later date simply because the new position has become advantageous.

Accordingly, the Court will deny the joint motion of RFF and BD Lending to strike and will allow summary judgment in favor of Link on the issue of the validity of the BD mortgage. RFF is estopped from denying the validity of the BD mortgage. Moreover, RFF's slander of title claim fails because it relies upon the Court finding that the BD mortgage was invalid. Thus, Counts I and IV of RFF's 2014 complaint will be dismissed.

### C. Additional Motions

#### 1. Motion of defendant Steven A. Ross to deem requests for admission by Link Development, LLC admitted (Docket No. 27)

Ross moves to deem "admitted" the requests for admission that he sent to Link. Link responded by denying the purported admissions and asking for an extension.

The Court will deny Ross's motion and allow, nunc pro tunc, Link's motion for an extension of time. While discovery deadlines are important to the orderly operation of the judicial system, the Court agrees with Link's characterization of BD Lending's motion as "gamesmanship." BD Lending, and all other parties for that matter, are admonished not to waste the Court's time with nit-picking motions and are forewarned that if they persist in doing so sanctions may be imposed.

**2. Motion of plaintiff RFF Family Partnership, LP to preclude Link from introducing certain evidence as a result of its failure to comply with discovery obligations** (Docket No. 42)

In this motion, RFF moves to preclude Link from introducing or relying on any evidence stemming from any late-produced documents, late-identified witnesses or the testimony of Essam Al-Tamimi. Notwithstanding Link's tardiness, the Court finds no prejudice here and RFF's motion will be denied in light of the eventual production of the requested documents and information.

**ORDER**

For the foregoing reasons,

1) In RFF Family Partnership, LP v. Link Development, LLC et al., 11-cv-11096, Plaintiff RFF Family Partnership, LP's motion for contempt (Docket No. 206) is **ALLOWED**;

2) In RFF Family Partnership, LP v. Link Development, LLC et al., 14-cv-10065:

a) the motion of defendant Link Development, LLC to dismiss the complaint (Docket No. 12) is **DENIED**;

b) the motion of defendant Steven A. Ross, individually and as Trustee of the BD Lending Trust, to deem requests for admission by Link Development, LLC admitted (Docket No. 27) is **DENIED**;

c) the motion of defendant Steven A. Ross, individually, for summary judgment on Counts III and V of the complaint (Docket No. 31) is **DENIED**;

d) the motion of defendant Steven A. Ross, individually, for summary judgment on the Cross-Claims of Link Development, LLC (Docket No. 32) is **DENIED**;

e) the motion of plaintiff RFF Family Partnership, LP
for partial summary judgment (Docket No. 39) is,
with respect to Counts I and IV, **DENIED**, but is,
with respect to Count II, **ALLOWED**;

f) the motion of plaintiff RFF Family Partnership, LP
to preclude use of evidence as a result of failure
to comply with discovery obligations (Docket No. 42)
is **DENIED**;

g) the motion of defendant Link Development, LLC for
partial summary judgment under Fed. R. Civ. P.
56(f)(1) against RFF Family Partnership (Docket No.
53) on Counts I and IV of RFF's complaint is
**ALLOWED**;

h) the motion of defendant Link Development, LLC for
summary judgment under Fed. R. Civ. P. 56(f)(1)
against BD Lending Trust (Docket No. 56) is **DENIED**;
and

i) the joint motion of plaintiff RFF Family
Partnership, LP and defendant Steven A. Ross,
individually and as Trustee of the BD Lending Trust,
to strike the untimely Cross-Motions for Summary
Judgment filed by Link Development, LLC (Docket No.
61) is **DENIED**.

Accordingly, Counts III and V of RFF's 2014 complaint
remain pending, as do defendants' cross-claims against each
other.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 30, 2014